**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

`

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4133-24

339 RIVER ROAD HOLDINGS,
LLC,

    Plaintiff-Respondent,

v.

PLANNING BOARD OF THE
BOROUGH OF EDGEWATER,

    Defendant-Appellant.

_____

        Submitted May 28, 2026 – Decided July 21, 2026

        Before Judges Mayer and Vanek.

        On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2015-24.

        Florio Perrucci Steinhardt Cappelli & Tipton, LLC, attorneys for appellant (Craig P. Bossong and Eric D. Lee, of counsel and on the briefs).

        Cleary Giacobbe Alfieri & Jacobs LLC, attorneys for respondent (Brian M. Chewcaskie, of counsel and on the brief; Jessica V. Henry, on the brief.

PER CURIAM

Defendant Planning Board of the Borough of Edgewater (Board) appeals from a July 14, 2025 order that vacated a March 25, 2024 resolution (Resolution) denying an application by plaintiff 339 River Road Holdings, LLC (RRH) for preliminary and final site plan approval of a commercial development. RRH appealed the Board's denial and the judge handling the appeal vacated the Resolution and granted RRH's site plan application as of right. Because the Board's denial was not arbitrary, capricious or unreasonable, we reverse the July 14, 2025 order and reinstate the Resolution.

I.

We glean the salient facts from the record before the Law Division, which rested on proofs before the Board as developed over several public hearings. On July 28, 2023, RRH applied for preliminary and final site plan approval to develop a one-story, commercial building with rooftop parking as a permitted use in the Borough of Edgewater's (Borough) B-3 Waterfront Commercial District on property located on River Road between Thompson Lane and Penny Lane (the Site). The Site is surrounded by residential, mixed-use, and other commercial developments.

A-4133-24

At the Board hearings, RRH presented testimony from its civil engineer Alexander Lomei, architects Joseph Pikiewicz and Daniel Kaplan, and traffic engineer Paul Going. The Board proffered testimony from its own traffic engineer, Brian Intindola.

The testimony proffered by RRH demonstrated that the Site, formerly a movie theater, would be redeveloped as a 161,000-square-foot retail building with 755 parking spaces on both the ground level and the rooftop. The Site would have one tenant, likely a discount-club retail "big box" store, including a grocery component with a potential twenty-four-hour operation. According to RRH's witnesses, the design complied with all applicable zoning, bulk, parking, building, and fire code requirements. No site plan waivers were requested or required.

The proposed rooftop parking area would feature a vestibule with four elevators and two stairways to facilitate pedestrian access, and would be engineered to safely support vehicles, snow, and other loads. RRH proffered that ambulances and police vehicles could reach the rooftop, while fire trucks would address rooftop fires using ground ladders, aided by two standpipes on the roof. RRH's witnesses opined the rooftop parking design was code-

A-4133-24

compliant, and the site plan met all applicable standards for traffic circulation and queuing.

The sole vehicular access to the Site would remain via Penny Lane and Thompson Lane, with no direct access from county-controlled River Road. Although the Site's vehicle circulation and access points would remain the same, the main entrance on Penny Lane would be expanded and another driveway would be added without changing the street's width.

A traffic impact analysis projected a significant increase in traffic, with up to 1,027 trips on a Saturday afternoon, resulting in queuing at the intersections of River Road with Penny Lane and Thompson Lane. During peak periods, traffic queues could extend to and potentially block access in and out of a neighboring development. RRH's traffic study did not consider the impact on neighboring residents who also use Penny Lane and Thompson Lane for ingress and egress.

RRH's traffic engineer anticipated the total average daily traffic on River Road to be approximately 28,000 vehicles. The only mitigation for the twenty-nine percent increase to River Road peak-time traffic would be adjustments to traffic signal timing, which was subject to county approval. The Board's traffic

4

consultant confirmed the methodology and conclusions of RRH's traffic engineer were consistent with accepted engineering practice.

Throughout the hearings, both Board members and the public raised issues regarding the safety and practicality of rooftop parking, including the failure to propose pedestrian walkways, lack of fire department access, reliance on a single point of ingress and egress, and location of the elevators. Additional concerns focused on the limited scope of RRH's traffic study, conducted during limited observation periods, which failed to evaluate potential hazards to vehicles entering and exiting the Site, did not consider tractor-trailers entering from the south, demonstrated tight queuing for right turns onto Penny Lane followed by left turns into the parking lot, and depended on county approval for traffic mitigation.

After the close of testimony on February 26, 2024, the Board voted unanimously to deny the application. The Board later adopted the Resolution memorializing its findings. The Resolution acknowledged the proposed use was permitted under the Borough's ordinances and no variances were required, but denied the application based on the rooftop parking design and an incomplete traffic study. The Resolution set forth the following finding that RRH's traffic study was incomplete:

A-4133-24

The Board determined and finds that it was not disputed and both the Board's traffic engineer and [RRH's] traffic engineer agreed that there will be a substantial increase in traffic to the [S]ite . . . as well as access to the [S]ite. All traffic will have to utilize either Penny Lane or Thompson Lane, both of which are local roads under the jurisdiction of the Borough. . . . As conceded by [RRH], a portion of Penny Lane and a portion of Thompson Lane are explicitly located on the subject property. Consideration of the impact to those two local roads as well as the residents and businesses that also use those roads is a [v]alid and proper consideration before the Board.

The Board finds that [RRH's] traffic engineer appeared to focus his study purely on the impacts to River Road, a [c]ounty [r]oad, and this focus was a clear attempt by [RRH] to divert the attention away from the impact said development will have on the local Edgewater roads, so that [RRH] can claim that all traffic issues created by this proposed project are within the County of Bergen's jurisdiction and therefore not to be considered by this Board. Although the Board concedes that any traffic impact to River Road and any necessary mitigation efforts on River Road are off-site and would be within the County of Bergen's jurisdiction, the impact to Penny Lane and Thompson Lane, as local, Borough . . . roads is clearly within the jurisdiction of this Board and the specific impact to the neighboring residents and businesses that also are forced to utilize those roads on a daily basis, should have been studied and included in [RRH's] traffic engineers report, which was not done.

As to the proposed rooftop parking area, the Resolution stated, "The Board was not satisfied with [RRH's] testimony and the proposed site plan and determined that the design of the structure, namely the rooftop parking, was not

6

in conformity with the surrounding structures." The Board also referenced concerns for pedestrian safety and emergency vehicle access to the rooftop parking area, along with its novel design. The Board found RRH had rejected proposed alternative designs. The Resolution set forth the Board's conclusion as to the proposed rooftop parking area but did not articulate any standards it applied:

> As a result of [RRH's] failure to address the rooftop parking concerns, or make any requested design changes to the [a]pplication, the Board finds that the application as designed is not in conformance with the standards of the Borough of Edgewater, does not meet the necessary [sic].

RRH filed a complaint in lieu of prerogative writs, seeking to vacate the Resolution and requesting entry of judgment granting site plan approval. After argument, the trial judge issued a July 14, 2025 order and written decision vacating the Resolution, finding it arbitrary, capricious, and unreasonable. The judge found RRH's application was fully conforming and the Board's denial was improperly based on off-site traffic and design preferences not supported by the Borough's ordinance. The judge emphasized the Board's own expert did not dispute the application's compliance with zoning, site plan, and parking requirements. Accordingly, the judge vacated the Resolution and granted RRH's

7

application for preliminary and final site plan approval as amended during the Board hearings.

On appeal, the Board argues the judge erred in vacating its denial of RRH's site plan application. It contends the Resolution was not arbitrary, capricious, or unreasonable and was supported by substantial evidence. The Board asserts RRH failed to provide a complete traffic analysis as required by ordinance and the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171. Alternatively, the Board requests the Law Division order be vacated and the matter remanded to the Board for it to reassess the application.

II.

We review a trial judge's decision regarding the validity of a municipal board's determination by applying the same standard as the trial court. Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App. Div. 2015) (citing Fallone Properties, L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999).

A-4133-24

In reviewing decisions by local boards, courts are mindful the Legislature vested boards with discretion related to decisions reflecting the character and level of development within their community. See Booth v. Bd. of Adjustment, 50 N.J. 302, 306 (1967). A board's decision is accorded a rebuttable presumption of validity. Harvard Enters., Inc. v. Bd. of Adjustment, 56 N.J. 362, 368 (1970). A board's decision "may be set aside only when it is 'arbitrary, capricious[,] or unreasonable.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)).

"[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). "The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Ibid. (citations omitted).

Accordingly, a court may not substitute its judgment over that of the local board absent a clear abuse of discretion. Cell S., 172 N.J. at 81-82 (citing Medical Realty Assocs. v. Bd. of Adjustment, 228 N.J. Super. 226, 233 (App. Div. 1988)). "Even were [the court] to harbor reservations as to the good

judgment of a local land use agency's decision, 'there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.'" CBS Outdoor, Inc. v. Borough of Lebanon Plan. Bd., 414 N.J. Super. 563, 577 (App. Div. 2010) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296-97 (1965)).

"[W]hen a party challenges a . . . board's decision through an action in lieu of prerogative writs, the . . . board's decision is entitled to deference." Kane Properties, LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). The burden is on the challenging party to overcome the highly deferential standard of review. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013).

III.

A.

"[Planning] boards are the creatures of statute and may exercise only those powers granted by statute." Toll Bros. v. Bd. of Chosen Freeholders of Cnty. of Burlington, 194 N.J. 223, 242-43 (2008) (quoting William M. Cox, New Jersey Zoning and Land Use Administration § 4-3.1 at 80 (Gann 2007)). Under the MLUL, planning board review of a site plans is limited to determining whether the application conforms with the municipality's zoning and site plan ordinances. See N.J.S.A. 40:55D-46; N.J.S.A. 40:55D-50; Pizzo Mantin Grp.

v. Twp of Randolph, 137 N.J. 216, 229 (1994) (holding that municipalities must "effectuate [the purposes of the MLUL] only by incorporating them as standards in duly-enacted zoning and subdivision ordinances"). While planning boards have "wide discretion to assure compliance with the objectives and requirements of the site plan ordinance," the discretion is "circumscribed" by the reach of applicable law. Shim v. Washington Twp. Planning Bd., 298 N.J. Super. 395, 411 (App. Div. 1997).

For a planning board to properly review a final site plan, an applicant must provide sufficient information upon which a board can determine compliance with the applicable provisions of the municipality's site plan and zoning ordinances. See e.g., El Shaer v. Planning Bd., 249 N.J. Super. 323, 332 (App. Div. 1991); W.L. Goodfellow and Co. of Turnersville, Inc. v. Washington Twp. Planning Bd., 345 N.J. Super. 109, 116 (App. Div. 2001) ("A planning board may . . . deny a site plan application if it lacks sufficient specificity or if an applicant has failed to provide pertinent information sufficient to assess the adequacy of a stormwater management plan."); Morris Cnty. Fair Hous. Council v. Boonton Twp., 228 N.J. Super. 635, 642 (Law Div. 1988) ("[I]f an applicant has failed to provide information pertinent to a plan, the plan may be denied on that basis.").

A-4133-24

Here, RRH's traffic expert conceded he did not study the anticipated traffic impact on Penny Lane and Thompson Lane. Because portions of Penny Lane and Thompson Lane are within RRH's property, its failure to provide sufficient information from which the Board could determine whether the site plan complied with the MLUL and local ordinances was a proper basis for denial. The MLUL and Borough ordinance permit the Board to consider the safety implications of on-site traffic circulation and the Site's ingress and egress. See N.J.S.A. 40:55D-51(b); Shim, 298 N.J. Super. at 411; Edgewater, N.J., Code § 240-166(D)(4)(a) (requiring all ingress and egress "to a public or private street to be located to afford maximum safety to the roadway, to provide for safe and convenient ingress and egress and to minimize conflict with the free flow of traffic").

We are unconvinced that the Board's denial rested solely on off-site traffic concerns outside the scope of its review. See Tennis Club Assoc. v. Planning Bd., 262 N.J. Super. 422, 434-35 (App. Div. 1993) (citing Dunkin' Donuts of N.J. v. N. Brunswick Twp. Planning Bd., 193 N.J. Super. 513, 515 (App. Div. 1984)) ("[S]ite plan approval for permitted uses cannot be denied by the planning board because of off-site traffic congestion."); PRB Enters., Inc. v. So. Brunswick Planning Bd., 205 N.J. Super. 225, 229-30 (App. Div. 1985) (citing

12

Lionel's Appliance Center, Inc. v. Citta, 156 N.J. Super. 257, 269 (Law Div. 1978)) ("[S]ite plan approval cannot be denied because of the intensity of vehicular traffic on adjoining roadways.").  As noted in the Resolution, RRH's civil engineer conceded that portions of Penny Lane and Thompson Lane lie within the Site's boundaries—thus, the traffic impact on those portions of the roadway was within the scope of the Board's review.  See N.J.S.A. 40:55D-51(b) (requiring site plan ordinances to provide for "[s]afe and efficient vehicular and pedestrian circulation, parking and loading").

RRH's traffic engineer also failed to analyze tractor-trailer access from the south and the impact of queueing on the Site's ingress and egress.  "A planning board may . . . deny a site plan application if the ingress and egress proposed by the plan creates unsafe and inefficient vehicular circulation."  Shim, 298 N.J. Super. at 411 (citing N.J.S.A. 40:55D-41(b)).  The Board permissibly denied site plan approval based on RRH's failure to provide sufficient information for it to determine the safety of ingress and egress and the traffic impacts on the adjacent local roadways, portions of which were concededly on the Site.

Because the incomplete traffic study formed a predicate for the Board's denial, RRH did not meet its burden of proving the Resolution was arbitrary,

capricious, or unreasonable. Price, 214 N.J. at 284. Absent sufficient evidence for the Board to assess the site plan's conformity with the MLUL and applicable Borough ordinances, the required deference to the Board's denial warrants reversal of the Law Division's order. See Jacoby, 442 N.J. Super. at 462.

B.

Both our decisional law and the MLUL require a planning board reviewing a site plan application to reduce its decision to writing and set forth findings of fact and conclusions of law sufficient to permit meaningful judicial review. N.J.S.A. 40:55D-10(g); NY SMSA, L.P. v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J. Super. 319, 332-33 (App. Div. 2004). "Without such findings of fact and conclusions of law, the reviewing court has no way of knowing the basis for its decision." Id. at 333.

Because the Resolution failed to articulate any portion of the MLUL or Borough ordinance the Site's proposed rooftop parking design violated, it does not constitute a permissible basis for denial. See Pizzo, 137 N.J. at 229 (confining planning board review "within the framework of the standards prescribed" by ordinance). However, we need not remand this issue for further Board consideration because the denial is independently sustainable based on RRH's incomplete traffic analysis. To the extent we have not addressed any of

14

the parties' other arguments, it is because they do not merit discussion in written opinion.  R. 2:11-3(e)(1)(E).

The judgment of the Law Division is reversed and the Resolution of the Board, denying RRH's final site plan application, is reinstated.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division